United States District Court
Southern District of Texas
**ENTERED**
March 14, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS TAMALE COMPANY, INC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-3341 |
| | § | |
| CPUSA2, LLC, | § | |
| D/B/A TEXAS LONE STAR TAMALES | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

This trademark infringement case is before the Court on Defendant's Motion for Relief from Motion from Summary Judgment.  ECF 59.[1]  Having considered the parties' submissions and the law, the Court DENIES the Motion for Relief.

## I.   Factual and Procedural Background

Plaintiff has used the trademarks "TEXAS TAMALE" and "TEXAS TAMALE COMPANY" (the Marks) since approximately 1985 in connection with the sale of Mexican-style food products and services in retail stores and on its website www.texastamale.com.  ECF 40-12 ¶ 3.  Plaintiff registered the Marks with the United States Patent Office in 2006 and has continuously used the Marks.  *Id.* ¶ 4; ECF 40-1.  In 2012, the Marks achieved incontestability status under 15

---

[1] The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes including entry of final judgment.  ECF 27.  Plaintiff's Motion for Permanent Injunction (ECF 68) remains pending.

U.S.C. § 1065.  After becoming aware that Defendant CPUSA2, LLC was using the phrase "Texas tamale" in advertising, Plaintiff sent letters in May 2020, January 2021, and August 2021 to demand that Defendant cease and desist.  ECF 40-8; ECF40-9; ECF 40-10.  After getting no response, on October 12, 2021, Plaintiff filed a Complaint in this Court asserting claims against Defendant for (1) trademark infringement under the Lanham Act, 15 U.S.C. § 114, and Texas common law; (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and Texas common law; and (3) a permanent injunction prohibiting Defendant from "(i) making further use of the designation "TEXAS TAMALE" or "TEXAS TAMALES" in connection with buying keyword ads on any internet search engine, and (ii) using the TEXAS TAMALE Mark in ad copy or other marketing materials that may be viewed by consumer[s]."  ECF 1 at 7-8.

On February 15, 2022, the Clerk entered Default due to Defendant's failure to respond to the Complaint.  ECF 19.  The Court subsequently vacated the entry of default on Defendant's motion, ECF 31, but denied Defendant's Motion to Dismiss.  ECF 34.  On November 13, 2022, Defendant finally filed an Answer to the Complaint and asserted counterclaims for declaratory judgment of non-infringement and for cancellation of the registration of Plaintiff's Marks on grounds that they are generic or descriptive without secondary meaning and,

therefore, invalid.  ECF 35.

On March 6, 2023, Plaintiff filed a Motion for Summary Judgment, supported by evidence, seeking summary judgment that:  "(i) Defendant has infringed Plaintiff's Marks in violation of 15 U.S.C. § 1114(1); (ii) Defendant has infringed Plaintiff's Marks in violation of Texas common law; (iii) Defendant's counterclaim for a declaration of non-infringement (Counterclaim Count I) fails as a matter of law; and (iv) Defendant's counterclaim for cancellation of Plaintiff's Marks fails as a matter of law (Counterclaim Count II)."  ECF 40 at 2.  Despite having narrowly escaped default judgment, Defendant did not file a timely response to the Motion for Summary Judgment.

The Court heard oral argument on Plaintiff's Motion on April 24, 2023, but due to Defendant's failure to file a timely response the Court did not permit Defendant to introduce new evidence.  ECF 41.  The Court granted summary judgment on liability favor of Plaintiff on all claims, but left pending the scope of injunctive relief, damages, and attorney's fees.  ECF 42.  The Court encouraged the parties to engage in settlement negotiations and set a schedule for briefing on the remaining issues.  ECF 44; ECF 49; ECF 58.  After Defendant's counsel was permitted to withdraw (ECF 48), Defendant's new counsel filed the instant Motion for Relief from Judgment pursuant to Federal Rules of Civil Procedure 60(b) and

3

36(b).[2]   Defendant's Motion for Relief has been fully briefed and is ripe for determination.

## II.  Rule 54(b) and Rule 60(b) Standards

The parties have briefed the Motion under Rule 60(b) and the Court analyzes the parties' arguments.  However, Federal Rule of Civil Procedure 54(b) states "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Rule 54(b) authorizes a district court to reconsider an interlocutory order "for any reason it deems sufficient."  *CAP Barbell, Inc. v. Hulkfit Prod.*, Inc., No. CV H-22-2371, 2024 WL 1023035, at *1 (S.D. Tex. Mar. 8, 2024) (citations omitted).  Rule 59(e) and Rule 60 considerations inform the Rule 54(b) analysis. *Id.*; *see also Deeds v. Whirlpool Corp.*, No. CV H-15-2208, 2017 WL 3437772, at *12 (S.D. Tex. Aug. 10, 2017) (listing relevant reconsideration factors as "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.").  For the reasons stated

---

[2] Rule 36(b) governs withdrawal of deemed admissions.  Because the Court concludes that relief from judgment is not warranted, the Rule36(b) motion is moot.

herein, the Court finds no manifest injustice in denying Defendant's Motion and the result would be the same had Defendant correctly lodged its motion under Rule 54.

Federal Rule of Civil Procedure 60(b)(1) permits a court to relieve a party from a judgment for "mistake, inadvertence, surprise, or excusable neglect," and Rule 60(b)(6) permits a court to grant relief from a judgment "for any other reason that justifies relief." However, a party may not seek relief under the catch-all provision in Rule 60(b)(6) if it could have been brought under Rule 60(b)(1)-(5). *D.R.T.G. Builders, L.L.C. v. Occupational Safety & Health Rev. Comm'n*, 26 F.4th 306, 313 (5th Cir. 2022).

Whether a party is entitled to relief for excusable neglect under Rule 60(b)(1) is essentially an equitable determination within the court's discretion. *Id.* at 312; *Smith-Hubbard v. Amica Mut. Ins. Co.*, No. 23-40331, 2024 WL 747249, at *1 (5th Cir. Feb. 23, 2024). Factors the district court should consider when analyzing excusable neglect under Rule 60(b)(1) include: "the danger of prejudice [to the non-movant], ... the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *D.R.T.G. Builders,* 26 F.4th at 312 (applying excusable neglect factors set forth in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

The Fifth Circuit has repeatedly held that a district court abuses its discretion if it grants relief under Rule 60(b)(1) based on counsel's gross carelessness, ignorance of rules, or ignorance of the law. *Smith-Hubbard*, 2024 WL 747249, at *2 (citing *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356 (5th Cir. 1993); *see also White v. Texas City Indep. Sch. Dist.*, No. 4:21-CV-2855, 2023 WL 8456138, at *2 (S.D. Tex. Dec. 6, 2023) (same). Parties are accountable for the acts and omissions of their attorneys and have a "a duty of diligence to inquire about the status of a case." *Edward H. Bohlin Co.*, 6 F.3d at 357; *Trevino v. City of Fort Worth*, 944 F.3d 567, 571 (5th Cir. 2019). Further, in analyzing whether relief is warranted under Rule 60(b)(1), the court should consider whether the moving party's claim or defense has merit. *See Edward H. Bohlin Co.*, 6 F.3d at 356; *see also Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 120 (5th Cir. 2008) (holding that "[a] district court has the discretion to refuse to set aside a default judgment under 60(b)(1) if the defendant 'fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party.'").

### III. Analysis

Here, Defendant moves for relief under both Rule 60(b)(1) and Rule 60(b)(6). Because Defendant has presented no extenuating circumstances under Rule 60(b)(6) that are not raised by the Rule 60(b)(1) motion, the Court does not consider

6

Rule 60(b)(6) as a separate ground for relief.  *D.R.T.G. Builders,* 26 F.4th at 313.

### A. Defendant has not demonstrated excusable neglect entitling it to relief under Rule 60(b)(1).

Defendant argues in support of its Rule 60(b)(1) motion for relief that Plaintiff will not be prejudiced by the granting of the requested relief, the length of delay from the requested relief and its impact on the proceedings would be minimal, and its failure to respond to the Summary Judgment Motion was not within Defendant's control.  ECF 59 at 4-5.  This case was filed in October 2021.  Defendants original counsel refused to accept service and Plaintiff was unable to locate Defendant's registered agent at the address listed with the Texas Secretary of State.  ECF 17-4; ECF 17-5.  Plaintiff eventually served Defendant through the Texas Secretary of State, but Defendant failed to answer.  ECF 17-7; ECF 18.  Only after Plaintiff obtained a default and moved for default judgment did Defendant finally appear.  ECF 21.  Defendant then filed a motion to dismiss, which was denied, and finally filed an answer and counterclaims 397 days after Plaintiff first sent a courtesy copy of the suit to Defendant.  ECF 34; ECF 35.  Defendant did not timely respond to discovery, providing responses to requests for admissions 111 days after they were served and failing to produce documents even in the face of an April 24, 2023 court order.  *See* April 24, 2023 Minute Entry.  Defendant did not respond to document

requests until after the Court entered an Order on May 10, 2023 threatening sanctions and the striking of pleadings.  ECF 44.  Once summary judgment was granted in favor of Plaintiff on April 25, 2023, Defendant waited almost four months to file the instant motion for relief under Rule 60(b).  ECF 42; ECF 59.  Given that this case has been on file for almost two and one-half years, and that Defendant has contributed in multiple ways to delays in the case, the Court finds that granting Defendant's requested relief under Rule 60(b)(1) would in fact prejudice Plaintiff.  In any event, the law is clear that "[a]n attorney's negligent failure to respond to a motion does not constitute excusable neglect."  *Optimal Health Care Servs., Inc. v. Travelers Ins. Co.*, 801 F. Supp. 1558, 1560 (E.D. Tex. 1992); *Trevino*, 944 F.3d at 571 (counsel's failure to register with the electronic filing system and subsequent failure to file a response to a motion to dismiss was not excusable neglect).  The law is also clear that Defendant is accountable for its attorney's failure.  *Edward H. Bohlin Co.*, 6 F.3d at 357; *Trevino*, 944 F.3d at 571.

The record demonstrates that Defendant was inexcusably negligent in defending itself from Plaintiff's charges from the inception of the dispute.  Having been granted relief from entry of default, Defendant completely failed to file any response to Plaintiff's Motion for Summary Judgment.  Defendant should have pro-actively addressed prior counsel's lack of diligence, failure to communicate, and

failure to comply with the obligations imposed by the Federal Rules of Civil Procedure.  Defendant's General Counsel learned of the case in January 2023, prior to the filing of Plaintiff's Motion for Summary Judgment, when the company owner approached him about concerns with outside counsel's performance.  ECF 59-2 ¶ 6. Yet, Defendant did not ensure that a summary judgment response was timely filed. Under the circumstances of this case, the Court concludes it would be an abuse of its discretion to grant Defendant relief from the Court's Summary Judgment Order pursuant to Rule 60(b).  *Smith-Hubbard*, 2024 WL 747249, at *2.

### B. Even if it could demonstrate excusable neglect, Defendant has not demonstrated a meritorious defense entitling it to relief under Rule 60(b).

Defendant contends that relief is justified in this case because Plaintiff's Marks are generic and not entitled to protection.  Defendant further argues relief is appropriate because the Court made a factual error in finding that Defendant CPUSA2, LLC is the successor in interest to Texas Lone Star Tamales, and a legal error in concluding that use of the Marks in Google AdWords constitutes trademark infringement.

As an initial matter, the Court reiterates that it decided Plaintiff's Motion for Summary Judgment based on the evidence in the summary judgment record, the arguments of counsel, and the law, and not merely based on Defendant's failure to

9

respond.  ECF 42.  Courts are more reluctant to grant, under Rule 60(b), relief from a decision made after review of evidence than they are to grant relief from a default. *Cazamias v. Devon Energy Prod. Co., L.P.*, No. 5:14-CV-86, 2017 WL 5642624, at *4 (S.D. Tex. Feb. 1, 2017); *Optimal Health Care Servs., Inc.*, 801 F. Supp. at 1561 (holding that relief from default resulting from failure to respond would be more likely than relief from judgment resulting from review of uncontroverted evidence).

### 1.  Defendant's assertions of error are not material.

Although the Court recited as fact that Defendant's predecessor, Texas Lone State Tamales, used the name "The Texas Tamale Warehouse" from 2014-2019, the Court's finding of infringement was based on evidence of Defendant's use of "Texas Tamales" in online advertisements beginning in 2020.  ECF 42 at 3 (citing ECF 40-3; ECF 40-4).  Therefore, to the extent CPUSA2 is not the successor in interest to Texas Lone Star Tamales, the factual error is not material to the judgment.

Further, even if the use of a registered mark in Google AdWords, in and of itself, does not infringe on the mark as a matter of law,[3] the Court granted summary

---

[3] *See WorkshopX Inc. v. Build a Sign, LLC*, No. 1:18-CV-850-RP, 2019 WL 5258056, at *2 (W.D. Tex. June 26, 2019) (recognizing that "in and of itself—using a competitor's trademark as a Google AdWords keyword does not constitute trademark infringement"), report and recommendation adopted, No. 1:18-CV-850-RP, 2019 WL 5243187 (W.D. Tex. July 12, 2019).

judgment based on evidence in the summary judgment record demonstrating that Defendant used Plaintiff's Marks in its own online advertisements, not just in Google AdWords. *See* ECF 42 at 9-10. In the Order granting Plaintiff's Motion for Summary Judgment, the Court left pending the issues of a permanent injunction and damages. Therefore, relief under Rule 60(b)(1) is not necessary for the Court to determine at the next stage whether Defendant's use of Plaintiff's Marks in Google AdWords by itself constitutes infringement entitling Plaintiff to a corresponding injunction and damages.

> **2. Defendant has failed to meet its burden to present a meritorious defense to Plaintiff's suit requiring equitable relief under Rule 60(b), because Defendant cannot overcome the presumption that Plaintiff's incontestable Marks are valid.**

The Court concluded in the Summary Judgment Order that Plaintiff's Marks are legally protectable because:

> The uncontested evidence shows that Plaintiff possesses the registered trademarks "TEXAS TAMALE" and "TEXAS TAMALE COMPANY" for use in connection with the sale of Mexican-style food products and services, including but not limited to tamales. ECF 40 at 2-3; ECF 40-1 at 1-3; ECF 40-12. Plaintiff has used the Marks continually since 1985 and obtained registration under § 2(f) of the Lanham Act in 2006. Id. Plaintiff represents that the Marks have been in continuous use in commerce for over 5 years since registration and have attained incontestable status under 15 U.S.C. § 1065. ECF 40 at 12; ECF 40-2 at 2; ECF 40-12.

ECF 42 at 8.[4]   Defendant challenges neither Plaintiff's representations in its summary judgment evidence, nor the Court's findings that the Marks are registered under § 2(f) and have achieved incontestable status.  Instead, Defendant challenges Plaintiff's incontestable Marks on the ground that they are, and always have been, generic.

Trademarks are generally characterized as generic, descriptive, suggestive, arbitrary, or fanciful.  *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990).  These categories have legal significance because they determine whether, and to what degree, a mark is entitled to trademark protection.  *Id.* at 844; *Sueros Y Bebidas Rehidratantes, S.A. de D.V. v. Indus Enterprises, LLC*, No. CV H-22-1304, 2023 WL 5733841, at *6 (S.D. Tex. Sept. 5, 2023) (stating that "the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks"). A generic term is one that describes a class of products or services of which a particular item is a member, such as "fish." *Id.* at 845.  A descriptive mark is one that identifies a characteristic or quality of the product or service, such as

---

[4] To prove a claim for trademark infringement, a plaintiff must show (i) that it possesses a legally protectable mark, and (ii) that defendant's use of the trademark creates a likelihood of customer confusion as to source, affiliation, or sponsorship. *Jones v. Am. Council on Exercise*, 245 F. Supp. 3d 853, 859 (S.D. Tex. 2017).

"speedy." *Id.*  Geographical terms such as "Texas" are considered descriptive when they describe where products are manufactured or where services are offered.  *Id.* A listing on the principal register of trademarks constitutes prima facie evidence of the registration and validity of a mark, as well as the registrant's exclusive right to use the registered mark in commerce or in connection with the goods and services specified in the registration.  15 U.S.C. § 1115(a).

In addition, 15 U.S.C. § 1065 sets out conditions under which a trademark becomes incontestable if "such mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce." When a trademark has become incontestable, as Plaintiff's marks have, the only defenses available to an alleged infringer are those enumerated in 15 U.S.C. § 1115(b)(1)-(9).  Neither the defenses of genericness nor mere descriptiveness are listed in § 1115(b)(1)-(9).  Accordingly, in *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985), the Supreme Court held that a defendant in a trademark infringement suit involving an incontestable mark may not defend the suit by arguing the mark is merely descriptive.  However, the Supreme Court also recognized that a registered mark, even one that has become incontestable, may be cancelled at any time on ground that it has *become* generic pursuant to 15 U.S.C. § 1064(3).  *Park 'N Fly, Inc.*, 469 U.S. at 194 (emphasis added).

13

Defendant does not argue Plaintiff's Marks are not entitled to protection because they are merely descriptive. Instead, Defendant argues the Marks are not entitled to protection because they are generic. A generic mark cannot be registered. *Park 'N Fly, Inc*, 469 U.S. at 194. Because generic marks cannot be registered on the principal register, and therefore cannot become incontestable pursuant to the provisions of 15 U.S.C. § 1065, logic would seem to dictate that an incontestable mark can only be challenged on the ground that it has *become generic* as opposed to having been generic even before registration. However, Defendant here argues not that Plaintiff's Marks have *become* generic, but that the Marks were generic from the outset and therefore should not have been registered or achieved incontestable status and are subject to cancellation. *See* ECF 59 at 1; ECF 64 at 1 (stating that Texas tamale has been a commonly known generic name "for the last 100 years").

At least one other court has faced the dilemma of whether a defendant can challenge a mark that has become incontestable as having been generic prior to registration, rather than as having *become* generic at some point after achieving incontestable status. A district court in the Northern District of California described the problem:

> The Court here confronts an interesting analytical snag. [Defendant] does not argue that the marks have *become* generic. In fact, [Defendant] explicitly disclaims this argument. [Defendant] argues instead that the

14

marks have always been generic and should never have been registered. Yet, §§ 1064(3) and 1065 only allow cancellation of an incontestable mark that has 'become generic.' If [Defendant] is not arguing that the marks have 'become generic,' it does not seem as though [Defendant] can prevail on its challenge to the incontestable marks. However, under § 1065(4), a mark cannot become 'incontestable' where the mark 'is the generic name for the goods or services ... for which it is registered.' Under this statutory provision, if 'wellness shot' and 'wellness shots' were always generic, and the USPTO's registrations were inappropriate, the marks never acquired incontestability. [Defendant's] position, then, undermines itself. It has disclaimed genericide, which would seem to put cancellation under § 1064(3) out of its reach. And yet, [Defendant] has conceded that the marks are incontestable, which would seem to circumvent its ability to argue that the marks were always generic.

*Threshold Enterprises Ltd. v. Pressed Juicery Inc*., 445 F. Supp. 3d 139, 148-149

(N.D. Cal. 2020).  The *Threshold* court's solution to the "analytical snag" was to

look at whether the Defendant had provided evidence of genericness and found that

it had.  445 F. Supp. 3d at 155 (holding "the evidence before the Court suggests

overwhelmingly that [the marks] are generic."); *see also Te-Ta-Ma Truth Found.--*

*Fam. of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 665 (7th Cir. 2002)

(holding that an incontestable mark may be enforced if descriptive but is subject to

cancellation if it is generic).

The Court finds above that under Rule 60(b)(1) it would be an abuse of

discretion to grant relief from the prior judgment.  But Defendant argues that equity

requires reversal of the summary judgment, relying on *Te-Ta-Ma Truth Found.--*

*Fam. of URI, Inc. v. World Church of Creator*, 297 F.3d 662 (7th Cir. 2002) for the proposition that "registration of a generic mark does not make it any more valid." ECF 64 at 2. As the *Threshold* court wrote, "[t]he harm in affording protection to a generic term is the same whether the mark became generic or whether the term was always generic." *Threshold Enterprises, Ltd.*, 445 F. Supp. 3d at 149. Similarly, the district court in *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1158 (S.D. Tex. 2016) decided it was required to consider "whether the Just Bulbs mark is generic[.]" Therefore, the Court will analyze Defendant's proffered defense that Plaintiff's Marks are and always have been generic.

"The test for genericness is whether the public perceives the term primarily as the designation of the article." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 538 (5th Cir. 2015) (quoting *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 227 (5th Cir.1995) (internal quotation marks, citation, and alterations omitted)); *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, 668 F. Supp. 3d 614, 638 (E.D. Tex. 2023) (citing *Nola Spice Designs, L.L.C.*, 783 F.3d at 538); *Bulbs 4 E. Side, Inc.*, 199 F. Supp. 3d at 1158 (same); *see also*, *Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 481 (S.D.N.Y. 2014) (noting that the *primary significance* of the term must be generic and that the term has some significance to the public as the name of an

16

article is not sufficient).  Put another way, a trademark is not generic if "the primary significance of the term in the minds of the consuming public is not the product but the producer."  *See Global Apogee v. Sugarfina, Inc.*, No. CV 18-05162-PSG-E, 2023 WL 3235934, at *4 (C.D. Cal. Mar. 31, 2023) (citations omitted) (holding that the evidence showed consumers thought of the term "candygram" as the generic term for all candy delivery services, not a specific candy delivery service).

The summary judgment record demonstrates that Plaintiff was granted registration of the Marks Texas Tamale and Texas Tamale Company for goods described as:

> MEXICAN STYLE FOOD PRODUCTS, NAMELY, CHILI, AVOCADO DIPS, JALAPENO JELLIES, JALAPENO STUFFED PROCESSED OLIVES AND PICKLED VEGETABLES, CHILI CON QUESO, IN CLASS 29 (U.S. CL. 46);
>
> and
>
> MEXICAN STYLE FOOD PRODUCTS, NAMELY, TAMALES, TACOS, ENCHILADAS, SALSA, MEXICAN RICE MIX, AND TORTILLA CHIPS, IN CLASS 30 (U.S. CL. 46).

ECF 40-1.  Thus, whether the Mark is generic must address whether the Marks "Texas Tamale" and "Texas Tamale Company" are generic for the class of goods for which the Marks are registered.  *See In re Cordua Restaurants, Inc*., 823 F.3d 594, 602 (Fed. Cir. 2016) (holding that a "proper genericness inquiry focuses on

17

the description of services set forth in the certificate of registration."); *Threshold Enterprises, Ltd.*, 445 F. Supp. 3d at 148 (stating that in determining whether a mark is generic the court first identifies "the category of goods or services to which the mark is meant to apply" and then "analyzing whether the relevant consuming public's primary perception of the mark is as a source of a product or as a type, category, or kind of product.").  Here, the Defendant has failed to put forth any evidence creating an issue of fact as to whether the Marks are generic for the category of goods they are intended to distinguish as set forth in the registration.  *In re Cordua Restaurants, Inc*., 823 F.3d at 602. (citing cases holding that registrability (and thus genericness) must be decided "on the basis of the identification of goods set forth in the application.").  The only evidence cited by Defendants in support of its genericness argument are descriptions of tamales as "Texas tamales."  *See* ECF 59 at 6-12.  Nothing presented by Defendant tends to show that the Marks are generic terms for the types of products to which the registrations apply—chile, avocado dips, jalapeno jellies, jalapeno stuffed processed olives, pickeled vegetables, chile con queso, tamales, tacos, enchiladas, salsa, Mexican rice mix, and tortilla chips—to distinguish Plaintiff's products from those of others.  *See, e.g. United States Patent and Trademark Office v. Booking.com B.V.*, 591 U.S. ___, 140 S. Ct. 2298, 2302 (2020) ("A trademark

18

distinguishes one producer's goods or services from another's.").

Moreover, Defendant's own argument, which focuses only on the tamale products and argues the phrase "Texas tamale" is "a commonly known generic name for [a] type of tamale traditionally made in Texas," fails even as applied to the single product of tamales.  First, the Court finds that Defendant's evidence of usage, mostly years ago, of the term "Texas tamale," is insufficient to meet its burden to show that the *primary significance* of Texas tamale in the minds of the consuming public is generic, and not just that the term has *some significance* to the public as the name of a product.  *See Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 481 (S.D.N.Y. 2014) (noting that the *primary significance* of the term must be generic and that the term has some significance to the public as the name of an article is not sufficient).  In *Threshold*, the court described the evidence presented by the defendant as including dictionary definitions, media usage, usage by competitors, and most significant, inconsistent treatment of the terms at issue by the USPTO itself in other applications.  445 F. Supp. 3d at 151-154.  In *Global Apogee,* defendants' evidence included a consumer survey conducted by an expert as to consumers' understanding of the terms at issue, as well as media usages.  2023 WL 3235934, at *4-5.  The evidence here is much weaker.

Second, the Court finds that Defendant is actually arguing mere

descriptiveness under the guise of genericness.  The Seventh Circuit has noted that the difference between a generic mark and a merely descriptive mark often "is not easily visible to the naked eye."  *Henri's Food Prod. Co. v. Tasty Snacks, Inc*., 817 F.2d 1303, 1306 (7th Cir. 1987) (holding that "tasty" is a descriptive term when used in connection with salad dressing that can convey a secondary meaning). Here, "tamale" is a generic name for a class of products; "Texas" is descriptive of a characteristic or quality of the products, including where the producer of the product is located.  *See Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990) (giving examples of generic and descriptive terms); *Park 'N Fly, Inc.*, 469 U.S. at 194 (stating "[a] generic term is one that refers to the genus of which the particular product is a species.").  A mark that is merely descriptive, like "Texas Tamale," may acquire secondary meaning.  *See Henri's Food Prod. Co. v. Tasty Snacks, Inc.*, 817 F.2d 1303, 1306 (7th Cir. 1987).  However, according to the Supreme Court's decision in *Park 'N Fly, Inc.*, Defendant cannot defend Plaintiff's infringement action on grounds that "Texas Tamale" is a merely descriptive mark.  *Park 'N Fly, Inc.,* 469 U.S. at 205.  Thus, even if Defendant's genericness argument is cognizable in the context of an incontestable mark, the defense fails just as it did in *Te-Ta-Ma* and

*Just Bulbs*.[5]

## IV.  Conclusion and Order

For the reasons discussed above, under the totality of the circumstances presented in this case, the Court concludes that equity does not require granting Defendant relief from the Court's Summary Judgment Order.   Therefore, Defendant's Motion for Relief from Summary Judgment (ECF 59) is DENIED.

Signed on March 14, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

---

[5] *TE-TA-MA Truth Found.--Fam. of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 666 (7th Cir. 2002) (holding "Church of the Creator" is descriptive, not generic); *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1158 (S.D. Tex. 2016) (holding "Just Bulbs" is not generic because "there are multiple other ways to designate a store selling primarily light bulbs.").